**In re Maria TRUMBAS, f/k/a Maria Babu, Debtor.**

**Bankruptcy No. 95–10841–CJK.**

United States Bankruptcy Court,
D. Massachusetts.

March 14, 2000.

David G. Baker, South Boston, MA, for Debtor.

Richard M. Coen, Providence, RI, for Federal National Mortgage Assn.

Doreen B. Solomon, Milton, MA, Chapter 13 Trustee.

### MEMORANDUM OF DECISION ON FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO MODIFY CHAPTER 13 PLAN

CAROL J. KENNER, Bankruptcy Judge.

█ The issue before the Court is whether the post-petition appreciation in the value of a chapter 13 debtor's real property, in the absence of its sale or refinance, warrants approval of an unsecured creditor's proposed modified plan pursuant to 11 U.S.C. § 1329(a). For the reasons set forth below, I hold that, under the facts of this case, the mere increase in value of a chapter 13 debtor's home, without more, is not cause to allow an unsecured creditor's motion to modify a post-confirmation chapter 13 plan.

1. Gabriella Babu, the Debtor's daughter, was a co-owner of the house and is a co-obligor on its underlying mortgages. The Debtor has submitted a deed, recorded on February 7, 1995, showing a transfer of the daughter's ownership interest to the Debtor. Consistent with her Schedule A, the Debtor is therefore the sole owner of the property but has a co-debtor on the mortgages.

2. FNMA holds the mortgage by virtue of an assignment from Plymouth Mortgage Company, Inc., the original mortgagee.

## BACKGROUND

The underlying facts are not in dispute. Maria Trumbas ("Debtor") filed for relief under chapter 13 of the United States Bankruptcy Code on February 8, 1995. According to her bankruptcy schedules the Debtor works in the laundry department of the Hebrew Rehabilitation Center where, in 1995, she earned $1,618.00 gross per month. She owns and lives in a three-family house at 82 Wyman Street in Brockton, Massachusetts.[1] When the Debtor filed her petition in 1995, she valued the house at $35,000.00.

The Federal National Mortgage Association ("FNMA") is the holder of a $180,737.57 first mortgage on the property.[2] On November 2, 1995, FNMA and the Debtor entered into a stipulation valuing the property at $40,000.00 and bifurcating FNMA's claim into a secured claim of $40,000.00 and an unsecured claim of $140,737.57.

The Court confirmed the Debtor's chapter 13 plan ("Plan") on February 21, 1996. The effective date of the sixty-month Plan is April 1, 1995. About four years into her Plan, on July 19, 1999, the Debtor filed a motion for authority to incur secured debt to refinance her home in which she states the fair market value of the property is $131,000.00.[3] The Debtor sought to borrow $104,800.00 against the property to pay off the remaining cram-down balance of FNMA's mortgage ($9,805.41) and the total due to unsecured creditors under the Debtor's Plan ($15,366.00), thereby obtaining her discharge. The Chapter 13 Trust-

3. FNMA never disputed this valuation. At the hearing on FNMA's motion, I allowed FNMA's oral motion to conduct an inspection of Debtor's home to confirm its value. I also gave FNMA the option of requesting an evidentiary hearing on the value of the house and Debtor's intent to refinance or sell, provided that FNMA make such request by January 7, 2000. FNMA has not requested a hearing and I therefore render this decision based on the pleadings and record before me.

ee and FNMA both filed objections to the motion, which the Debtor then withdrew.

On November 3, 1999, FNMA filed a motion to modify the Debtor's Plan under § 1329(a) and a proposed plan. FNMA's plan envisions that the Debtor will make a lump sum payment of $131,000.00 which would provide a 90.69% dividend to unsecured creditors. *See Proposed Plan* at p. 4, ¶ VI(i). According to the new plan "the funds to be paid to unsecured creditors should be obtained by the Debtor's refinancing the property." *See id.* at p. 1. The Debtor filed an objection to FNMA's motion. On December 13, 1999, the Court held a hearing. The Court ordered the Debtor to file an affidavit with respect to her intentions to refinance or sell the property; the Debtor filed her affidavit on December 16, 1999.[4] In her affidavit, the Debtor swears that she does not intend to either sell or refinance her house in the future; that it is her permanent home; and that she is in the process of retiring from her employment. The parties filed supplemental memoranda and the Court took the matter under advisement.

### DISCUSSION

Section 1329(a) of the Bankruptcy Code permits the debtor, the chapter 13 trustee, and the holder of an allowed unsecured claim to request modification of a chapter 13 plan prior to the completion of payments for three purposes:

> a. [to] increase or reduce the amount of payments on claims of a particular class provided for by the plan;

> b. [to] extend or reduce the time for such payments; or

> c. [to] alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan. *See* 11 U.S.C. § 1329(a) (West, 1994).

Courts have struggled with the proper interpretation and application of this provision.[5] *See In re Barbosa,* 236 B.R. 540, 546–47 (Bankr.D.Mass.1999) *order aff'd* 243 B.R. 562 (D.Mass.2000) *and cases cited therein.* The fundamental difficulty in this section is its lack of a standard to determine when and whether an upward or downward modification of a post-confirmation chapter 13 plan is appropriate. By its terms, § 1329 does not provide any guidance for modification and some courts have interpreted the statute as granting the parties an absolute right to request modification. *See In re Barbosa,* 236 B.R. at 547 *adopting approach set forth in Matter of Witkowski,* 16 F.3d 739, 742 (7th Cir.1994); *but see Arnold v. Weast (In re Arnold),* 869 F.2d 240 (4th Cir.1989); *see also In re Rangel,* 233 B.R. 191 (Bankr.D.Mass.1999).

 Although there may be an absolute right to request modification of a plan between confirmation and completion of plan payments, it does not necessarily follow that there is an automatic right to have the request allowed. As a practical matter, a party requesting modification of a post-confirmation chapter 13 plan must

4. It was unclear at the time of the hearing whether the Debtor's daughter, Gabriella Babu, was a co-owner of the property. The Court therefore ordered the Debtor and her daughter to file an affidavit regarding their intent to refinance or sell the house in the future. When the Debtor filed her affidavit, she attached a copy of the deed indicating that the Debtor is now the sole owner of the property. The affidavit is therefore in the Debtor's name only and signed only by her. FNMA has not objected to the affidavit.

5. As a threshold matter, the Court rules that FNMA, as holder of an allowed unsecured

claim of $140,737.57 has standing under § 1329(a) to bring this motion. That FNMA's unsecured claim derives from a bifurcation of a secured loan or that FNMA is also a secured creditor in these proceedings does not alter the fact that FNMA is an unsecured claim holder. It is therefore entitled to the rights and protections afforded unsecured claim holders under the Bankruptcy Code, including the right to bring a motion to modify under § 1329(a). *See, e.g., In re Walker,* 153 B.R. 565, 568 (Bankr.D.Or.1993) (creditor had standing under § 1329 based on its status as holder of an unsecured deficiency claim).

have a legitimate reason for doing so, and the party must strictly conform to the three limited circumstances set forth in the statute. *In re Barbosa*, 236 B.R. at 548. Furthermore, a modified plan must otherwise be confirmable and cannot exceed the Court's authority over the debtor or creditors. *See, e.g., In re Barbosa*, 236 B.R. at 556; *In re Martin*, 232 B.R. 29, 37 (Bankr. D.Mass.1999). Thus, for example, a bankruptcy court cannot confirm a modified plan that does not provide a secured creditor with the full value of its claim as required by § 1325(a)(5). Similarly, a court cannot confirm a modified plan that exceeds the sixty-month limit of § 1322(d) or that forces the debtor to obtain a second job or to involuntarily incur new debt.

■ Unlike chapter 7 which contemplates payment of creditors from the liquidation of assets, the chapter 13 statutory scheme is oriented toward the payment of creditors from projected future earnings of debtors who have regular income. *See In re Barbosa*, 236 B.R. at 545; *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 959–60 (N.D.Ill.1997). It provides a vehicle through which an honest debtor can achieve fiscal rehabilitation by devoting all disposable income into a plan to pay creditors. Section 1329 is intended to promote the ability-to-pay standard to allow upward or downward adjustment of plan payments in response to changes in a debtor's circumstances which substantially affect the ability to make future payments. *See* KING ET ALS., 8 COLLIER ON BANKRUPTCY ¶ 1329.01, 1329–5 (15th ed. rev.1999). Accordingly, post-confirmation plan modifica-

tion is usually sought by a debtor when there has been an unanticipated and substantial decrease in income (e.g., unemployment) or by an unsecured creditor or the trustee when the debtor experiences an increase or windfall (e.g., an inheritance or lottery winning).[6] *See, e.g., In re Guernsey*, 189 B.R. 477, 480–81 (Bankr. D.Minn.1995).

■ I interpret § 1329 as permitting only those modifications which are consistent with these goals. I decline to construe the provision in such a manner that would lead to the "absurd result that a Chapter 13 debtor could be required by consecutive motions from unsecured claim holders to continuously modify the confirmed plan if the debtor owns an asset that appreciates after confirmation of each modified plan." 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY 6–132 (1996). That the Debtor's home would increase in value was foreseeable when the Court confirmed the Debtor's plan in 1995. Neither FNMA nor the Debtor provided for the use of post-confirmation appreciation in value, either in the confirmation order or the parties' stipulation, to fund the Debtor's plan. And nothing in the Bankruptcy Code requires the Debtor—after diligently making 57 months of plan payments (out of 60 plan payments) under a confirmed plan—to incur new debt or to sell her home as a condition precedent to obtaining her discharge. I therefore decline to extend the scope of § 1329 to require the modification FNMA seeks to accomplish here.[7]

---

**6.** FNMA characterizes the appreciation of the Debtor's home as a "windfall." The Court disagrees. An increase (or decrease) in the value of an asset is an intrinsic benefit (or risk) of ownership and absent further action by the owner, is not a "windfall," i.e., unexpected income. The change in value standing alone is simply an incident of ownership. It does not affect the Debtor's ability to pay based on her future earnings because the Debtor has not experienced any change in income. A number of courts, including the *Barbosa* court, have considered post-confirmation sales of property which appreciated

post-petition and have concluded that the debtor must make the proceeds available to unsecured creditors. *In re Barbosa*, 236 B.R. at 554. In this case, the fact that the Debtor has not realized proceeds from the appreciation of her home distinguishes her case from others and is outcome determinative.

**7.** A proposed modification under § 1329(a) involves a two-part analysis: First, the plan proponent must show a legitimate reason for modification under § 1329; *and second*, the proposed plan must conform with the other provisions of the Bankruptcy Code. Because

## CONCLUSION

Based on the reasons stated above, I conclude that FNMA's proposed modified plan cannot be approved under § 1329(a). A separate order denying FNMA's motion shall enter accordingly.

the holding in this case is based on the first prong of the analysis (i.e., the post-confirmation appreciation of the Debtor's home does not warrant allowing FNMA's modified plan under § 1329(a)) whether FNMA's proposed plan is otherwise confirmable is not outcome determinative. I therefore make no finding on its feasibility or confirmability. The Court notes, however, that it is unlikely that the Debtor could refinance her property at 100% of its value, as FNMA's plan would require.