**In re Ralf Edmond EULER and Karen Euler, Debtors.**

No. 97–00304–8W3.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 9, 2000.

742

Michael Barnett, Tampa, Florida, for the Debtors.

Eric Barksdale, Bradenton, Florida, for Terry E. Smith, Chapter 13 Trustee.

### MEMORANDUM DECISION AND OR-DER ON DEBTORS' MOTION TO SELL NON-EXEMPT REAL ES-TATE

MICHAEL G. WILLIAMSON,
Bankruptcy Judge.

This case came on for hearing on June 19, 2000 ("Hearing"), on a motion for authority to sell non-exempt real estate ("Motion") filed by the debtors, Ralf and Karen Euler ("Debtors"). The Motion sought authority under Bankruptcy Code §§ 1303 and 363(b) for the Debtors to sell their interest in certain real estate consisting of a New Jersey townhouse ("Property"). The Motion contemplated use of the net receipts from the sale to pay off the balance due under the Chapter 13 Plan ("Plan") which had been confirmed by the court on September 22, 1997. Even though the Property has appreciated since confirmation of the Plan, the Motion did not contemplate the use of the additional value to pay creditors beyond the amounts due under the Plan.

At the Hearing and by a subsequent filing with the court, the Chapter 13 Trustee ("Trustee") objected to the proposed use of the proceeds of the sale based on the contention that Bankruptcy Code § 1329 allows the Trustee to modify the Plan so that the appreciated value of the Property could be "captured for the benefit of creditors." *Trustee's Supplemental Authority Following Hearing on Debtor's*

*Motion to Sell Nonexempt Real Estate* at 1-2..

For the reasons stated below, the court will overrule the Trustee's objection. The Trustee does not have the right under the circumstances to modify the Plan to increase the distribution to unsecured creditors resulting from appreciation to property owned by the Debtors at the time of confirmation of the Plan.

## FINDINGS OF FACT

The Debtors filed their petition on January 8, 1997 ("Petition Date"). In "Schedule A," the Debtors listed a townhouse in New Jersey valued at $142,000, encumbered by a mortgage securing a debt of $127,012.59. Thus, as of the Petition Date, based on the Debtors' schedules, there was approximately $14,000 of equity in the Property.

The Plan was filed on January 8, 1997 and was confirmed on September 22, 1997. The Plan provided for a 42% dividend to holders of unsecured claims.

On May 15, 2000, the Debtors filed the Motion. The Motion requested authority to sell the Property in accordance with a contract under which the buyers would pay a total purchase price of $207,000. Based on the amount of the mortgage debt which would be paid at closing, the proceeds from the sale will be approximately $60,000, well in excess of the $14,000 of equity reflected in the schedules.

The Motion contemplates that the net receipts from the sale would be used to

"pay off the plan."[1] The amount owed on account of unsecured claims as of the date the Motion was filed was $4,644.

## ISSUE

Can a Chapter 13 trustee modify a confirmed Chapter 13 plan to increase the distribution to unsecured creditors as a result of the sale of real property owned by the Debtors pre-petition which appreciates after the confirmation of the Plan?

## CONCLUSIONS OF LAW

### Bankruptcy Code § 1329

Post-confirmation modification of a debtor's Chapter 13 plan is governed by Bankruptcy Code § 1329. This section provides in pertinent part:

"(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan."

---

1. Contrary to the contemplated use of the proceeds as expressed in the Motion, on June 12, 2000, the Debtors paid the final eight payments amounting to $4,644 to the Trustee to complete all payments due under the Plan. At the time that the Trustee received and accepted these payments, the Trustee was not aware that the net proceeds from the sale would be approximately $60,000. The source of the $4,644 was a loan from the debtor's exempt 401k profit sharing plan. It appears that the reason for the early payoff of the final eight payments from other exempt funds of the Debtors was to deprive the Trustee of the right to modify the Plan since a plan can only be modified under § 1329 "before completion

of payments under the plan...." This would avoid entirely the argument that the Trustee could capture any excess funds resulting from the Property's appreciation under a modified plan. At the Hearing, the Trustee accused the Debtors of trying to "end-run" his right to amend the Plan under § 1329 by paying off the remaining amounts due under the Plan when the Trustee was unaware of the magnitude of the Debtors' equity in the Property. Based on the conclusions of law set forth below the Court does not have to reach the question of whether the Debtor's attempted "end-run" would otherwise have been successful.

While Bankruptcy Code § 1329 gives the right to request a modification of a plan not only to the debtor but to the Chapter 13 trustee and any unsecured creditor, it is silent as to whether the court should impose any conditions on a modification requested by a Chapter 13 trustee or unsecured creditor other than those provided by § 1329(b). Some courts would impose no conditions beyond those described in § 1329(b). This section simply requires that the plan as modified meet the standards: (1) as to the content of the plan as provided by Bankruptcy Code § 1322 and, (2) confirmation of the plan as provided for by Bankruptcy Code § 1325(a).[2]

Other courts have required a showing by the non-debtor plan proponent that a substantial and unanticipated change in circumstances justifies the modification.[3]

### The "Plain Meaning" Cases

Those cases that look to § 1329 as fully circumscribing the standards for confirmation of a modified plan offered by a non-debtor do so on the basis that § 1329 is "plain and unambiguous," and, therefore, should be accorded its plain meaning.[4]

As reasoned by Judge Lundin in *In re Perkins*, changed circumstances or unanticipated events after confirmation of the original plan may be evidence relevant to one or more of the listed standards. However, changed circumstances, unanticipated or otherwise, "is not imposed by the Code as a threshold barrier to access to modification under § 1329." *Id.* at 673. Rather, the proponent of a modified plan must simply satisfy the tests in §§ 1322(a), 1322(b), 1322(c) and 1325(a) as required by § 1329(b)(1). *Id.* See also *In re Than*, 215 B.R. at 434 ("Modification is essentially a new plan and must be consistent with the statutory requirements for confirmation.").

This approach to statutory construction is both simple and appropriate in cases where the statute is clear and unambiguous in its application. Unfortunately, as also stated by Judge Lundin, § 1329 is "somewhat awkward in concept and application." *In re Perkins*, 111 B.R. at 673. That is, when viewed in the context of the purposes of Chapter 13, the "plain meaning" approach can lead to results that are inconsistent with the purpose of Chapter 13.

 The goal of Chapter 13 is to encourage financially overextended individuals to make greater voluntary use of repayment plans. See generally *Collier on Bankruptcy* (15th ed. Rev.), ¶ 1300.02 at 1300-13. Under Chapter 13, a voluntary[5]

---

2. See *In re Witkowski*, 16 F.3d 739 (7th Cir.1994)(allowing modification based on the failure of some unsecured creditors to file claims); *In re Brown*, 219 B.R. 191 (6th Cir. BAP 1998)(post-confirmation settlement of pre-confirmation personal injury action); *In re Than*, 215 B.R. 430 (9th Cir. BAP 1997)(modification proposed to increase number of months of plan after fewer than anticipated claims were filed); *In re Studer*, 237 B.R. 189 (Bankr.M.D.Fla.1998)(Jennemann, J.)(trustee could modify a confirmed plan to account for additional funds that debtors had received as a result of settlement of a post-petition personal injury cause of action); *In re Perkins*, 111 B.R. 671 (Bankr.M.D.Tenn.1990)(modification denied when post-confirmation of a revealed asset is converted into cash for failure to meet feasibility test in 11 U.S.C. § 1325(a)(6)).

3. See *In re Arnold*, 869 F.2d 240 (4th Cir.1989)(debtor's income from $80,000 to $200,000 per year was a change in circumstances which warranted plan modification); *In re Euerle*, 70 B.R. 72 (Bankr.D.N.H.1987) (unanticipated inheritance of $300,000 is a basis for plan modification); *In re Gronski*, 86 B.R. 428 (Bankr.E.D.Pa.1988)(modest increase in income was not unanticipated circumstances which permitted plan modification); *In re Fitak*, 92 B.R. 243 (Bankr. S.D.Ohio 1988)(withdrawal of retirement funds warranted modification since it was an unanticipated event).

4. See note 2 *supra*.

5. In passing the Bankruptcy Amendments and Federal Judgeships Act of 1984, Congress again rejected the idea of an involuntary Chapter 13. *Collier on Bankruptcy* (15th ed. Rev.), p. 1300.02 at 1300-14.

debtor proposes a plan under which the debtor keeps all of the debtor's assets (other than those the debtor chooses to surrender).

As a condition of confirmation of the plan, it must provide for payment to secured creditors an amount that over time is equal to the value of their collateral. Bankruptcy Code § 1325(a)(5). In addition, unsecured creditors receive an amount equal to at least what they would receive in a Chapter 7 liquidation. Bankruptcy Code § 1325(a)(4). The Plan must also provide that unsecured creditors are paid in full or, upon objection by the trustee or an unsecured creditor, that all of the debtor's "projected disposable income" over the three-year period of plan payments be applied to make payments under the plan. Bankruptcy Code § 1325(a)(6)(B).

As a threshold requirement, Chapter 13 debtors are required to file a plan. Bankruptcy Code § 1321 ("The debtor shall file a plan."). In fact, the Chapter 13 debtor has the exclusive right to file a plan. H.R. Rep. No. 595, 95th Cong., 1st Sess. 143 (1977), U.S.Code Cong. & Admin.News 1977 p. 5963; S. Rep. No. 989, 95th Cong. 2d Sess. 141 (1978), U.S.Code Cong. & Admin.News 1977 p. 5787; *Collier on Bankruptcy* (15th ed. Rev.), ¶ 1321.01 at 1321-2. While the Chapter 13 trustee may advise the debtor on the preparation and performance under the plan, there is no authority for either a Chapter 13 trustee or a creditor under any circumstances to file a plan. *See generally* Bankruptcy Code § 1302; *8 Collier on Bankruptcy* (15th ed. Rev.), ¶ 1321.01 at 1321-2.

The Debtor's Plan in this case does not provide for an adjustment to the payment to unsecured creditors in the event that the Property appreciates above the value listed in the Debtor's schedules over the term of the Plan. Nor does it contemplate use of equity in the Debtor's real estate assets to pay unsecured creditors. Indeed, the Debtor could not have been compelled to include such provisions in the Plan as originally proposed by the Debtor and confirmed by the court—so long as the Plan otherwise met the requirements of § 1325(a). Nor, as previously discussed, could have the Trustee or any creditor initially proposed such a plan.

### The Legislative History of § 1329

If the literal application of the words of § 1329 would allow the Trustee to now amend the Plan—with the result that the Trustee can accomplish through amendment what the Trustee could not accomplished in the first instance—then that is a result demonstrably at odds with the intentions of the drafters of the Bankruptcy Code. It is clear that the drafters of the Bankruptcy Code intended that the Debtor has the exclusive right to propose a plan dealing with the Debtor's assets and liabilities existing as of the date of confirmation of that Plan. *See 8 Collier on Bankruptcy* (15th ed. Rev.), ¶ 1321.01 at 1321-2.

To now allow the Trustee to accomplish through amendment a treatment of the assets of the Debtor existing on the date of Confirmation would defeat the Debtor's exclusive right to file a Chapter 13 Plan. At best, it would make Chapter 13 ambiguous as to a debtor's exclusive right to file a plan dealing with the debtor's assets and liabilities as of the date of confirmation. As stated in *In re Trumbas,* 245 B.R. 764 (Bankr.D.Mass.2000),

"I decline to construe the provision [§ 1329] in such a manner that would lead to the 'absurd result that a Chapter 13 debtor could be required by consecutive motions from unsecured claim holders to continuously modify the confirmed plan if the debtor owns an asset that appreciates after confirmation of each modified plan.'"

*Citing* 2 Lundin, *Chapter 13 Bankruptcy,* at 6-132 (1996).

In such instances, in order to reconcile provisions of a statute which otherwise achieve contradictory or absurd results, it is appropriate to resort to leg-

islative history. *See, e.g., Oklahoma v. New Mexico*, 501 U.S. 221, 236 n. 5, 111 S.Ct. 2281, 115 L.Ed.2d 207 (U.S. 1991)("[W]e repeatedly have looked to legislative history and other extrinsic material when required to interpret a statute which is ambiguous...").

In this regard, the legislative history of § 1329 reconciles these provisions. Specifically, § 1329 was amended as part of the Bankruptcy Amendments and Federal Judges Act of 1984 ("BAFJA"). It was BAFJA that gave to Chapter 13 trustees and holders of unsecured creditors the right to request modification of a plan. Prior to that amendment, only the debtor could modify a plan.

▆▆ While the amendment to § 1329, authorizing the Chapter 13 trustee and unsecured creditors to request plan modifications after confirmation,[6] was passed as part of BAFJA, the work on this amendment preceded BAFJA by several years and was originally found in a proposed new section 1329(d) which was the subject of the *"Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary in 1982."*[7]

As originally envisioned, this new provision would only have extended the right to modify to holders of unsecured creditors and would have permitted them to request modification of a plan "in response to changes in circumstances substantially affecting the ability of the debtor to make future payments under the plan."[8]

### *The Provisions of the Plan are Res Judicata*

In this case, the intended modification would deal with property already dealt with by the confirmed Plan.

▆▆ It is clear that a confirmed Chapter 13 plan is binding on the debtor and all creditors. Bankruptcy Code § 1327. The confirmation of a debtor's plan constitutes a final judgement on the merits in a bankruptcy case. *In re Brown*, 219 B.R. 191 (6th Cir. BAP 1998)(*citing Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992), *cert. denied* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358 (5th Cir.1972)).

▆▆ All participants in the bankruptcy case are barred by the doctrine of res judicata from asserting matters they could have raised in the bankruptcy proceedings. *In re Brown*, 219 B.R. at 194. A trustee is considered a party to a confirmation hearing, and, as such, is bound by the proceeding. *Id.* Although these cases involve the effect of a confirmation in a Chapter 11 case, the reasoning is equally applicable in this Chapter 13 case. *In re Brown*, 219 B.R. at 194.

▆▆ Accordingly, principles of claim preclusion or res judicata bar a trustee from raising as grounds for modification facts that were known and could have been raised prior to confirmation of the debtor's plan. *In re Wilson*, 157 B.R. 389, 390 (Bankr.S.D.Ohio 1993).

▆▆ Whether a change is unanticipated and thus could not have been raised prior to confirmation of the debtor's plan is determined objectively. *Id.* That is, the test is whether the change could have been reasonably anticipated at the time of confirmation. *Id., citing In re Fitak*, 92 B.R. at 243; *In re Arnold*, 869 F.2d at 243.

---

**6.** Note that no similar change was made as to the right of a Chapter 13 trustee or unsecured creditor to file a plan modification *prior* to confirmation. Bankruptcy Code § 1323 has always provided that only a debtor may modify a plan prior to confirmation.

**7.** 97th Cong., 1st and 2d Sess.

**8.** *Oversight Hearings on Personal Bankruptcy Before the Subcommittee on Monopolies and Commercial Law of the House Committee on the Judiciary,* 97th Cong., 1st and 2d Sess., 215, 221 (1981-82).

### Post-Confirmation Appreciation of Real Estate Is Not a Windfall

■ The issue before this court, therefore, is whether or not it could have been reasonably anticipated that the debtor's non-homestead real estate could appreciate over the 32 months of the Debtor's Plan. Changes in the value of real estate can hardly be considered to be unanticipated. As stated by the court in *In re Fitak*, 121 B.R. 224, 228 (S.D.Ohio 1990):

"In a market economy, real estate values do indeed fluctuate and may well increase. Cross appellants' suggestion that an increase in real estate values over a fifty-seven month period could not be reasonably anticipated lacks credulity and merit."

■ An increase or decrease in the value of an asset "is an intrinsic benefit (or risk) of ownership and ... not a 'windfall,' i.e., unexpected income." *In re Trumbas*, 245 B.R. 764, 767 n. 6 (Bankr.D.Mass. 2000). The change of value alone is just an incident of ownership. *Id.* This situation is easily distinguishable from unanticipated events which occur post-confirmation dealing, for example, with the debtor's substantial income increase,[9] or acquisition of a new asset as a result of an inheritance,[10] or a lottery winning.[11]

■ Under the circumstances of this case, the Trustee could have anticipated the possibility that real estate may appreciate and objected to the Plan—on the basis that the Plan did not provide that the appreciated value of any real estate would be liquidated and applied toward the amount owed to unsecured creditors. *In re Wilson*, 157 B.R. at 389 ("Parties should anticipate such a result and should require such contingencies to be provided for in the plan.").

The Plan did not contain a provision providing that the equity of appreciated property would be used to increase the distribution to unsecured creditors. Absent such a provision, confirmation acts as res judicata on the issue of the whether the proceeds from appreciated real estate, existing at the time of confirmation, should be added to the debtor's disposable income (to be applied to payment of unsecured creditors if and when such real estate appreciates).

Therefore, the provisions of the plan are res judicata so as to preclude the Trustee from obtaining a Plan modification at this time.

### Proceeds from Sale of Appreciated Property Are Not Disposable Income

■ There is also a substantial question whether requiring a debtor to liquidate property because it appreciates is required by the disposable income requirements of § 1325(b)(1)(B). The typical context in which post-confirmation appreciation or depreciation arises is where the property is collateral for a loan such as an automobile. In such instances, Chapter 13 does not contemplate that the debtor may modify the amount of the allowed secured claim post-petition due to a depreciation in the secured creditor's collateral.

■ As stated by Judge Jennemann in *In re Meeks*, 237 B.R. 856, 861, "A debtor who decides to retain collateral at a confirmation hearing is entitled to any later appreciation in value but also must suffer any resulting depreciation or loss." *See also In re Evora*, 242 B.R. 560, 561 (Bankr.D.Mass.1999); *In re Coleman*, 231 B.R. 397 (Bankr.S.D.Ga.1999); *In re*

---

**9.** *See In re Arnold*, 869 F.2d 240 (4th Cir.1989)(increase in debtor's income from $80,000 to $200,000 per year justified plan modification to increase payments).

**10.** *In re Euerle*, 70 B.R. 72 (Bankr.D.N.H.1987)(inheritance of $300,000

warranted modification of Chapter 13 plan to provide for full payment to creditors).

**11.** *See In re Cook*, 148 B.R. 273 (Bankr.W.D.Mich.1992)(lottery earnings of $6.0 million warranted modification to plan to provide for 100% pay out to creditors).

*Banks,* 161 B.R. 375 (Bankr.S.D.Miss. 1993).

 This court does not believe that a different result should apply with respect to the rights of unsecured creditors to have included in future disposable income the potential proceeds from appreciated real estate owned by the debtor at the time of confirmation. Rather, the court believes that the better view is that "[t]he proceeds of the sale of a debtor's real estate in a chapter 13 case never become disposable income for purposes of chapter 13." *In re Burgie,* 239 B.R. 406, 409 (9th Cir. BAP 1999). To hold otherwise is contrary to the basic structure of Chapter 13.

In a Chapter 13 case, the debtor retains all pre-petition property. Post-petition disposable income does not include pre-petition property or its proceeds. "This is the chapter 13 debtor's bargain." *Id.* In exchange for satisfying the best interest of creditors' test of § 1325(a)(4), the debtor keeps these assets free from any claim of creditors. *Id. See also Hagel v. Drummond (In re Hagel),* 184 B.R. 793, 796 (9th Cir. BAP 1995); Lundin, *Chapter 13 Bankruptcy* §§ 1.7, 1.21, 1.44, 8.17 (2d ed. 1997).

The sale of a capital asset does not create "disposable income" for purposes of § 1325(b)(4). *In re Burgie,* 239 B.R. at 409. A debtor's pre-petition real estate is a capital asset—not post-petition income. *Id.*[12] Even if the Debtor had formed an intention to sell the Real Estate before confirmation of their Plan, they cannot be compelled to use the proceeds to pay creditors under their Plan pursuant to a plan modification. *Id.*

### CONCLUSION

The Trustee's objection to the Motion is based on the Trustee's intention to seek modification of the Plan to apply the proceeds from the sale of the Debtors' appreciated real estate to the unpaid balance owed to unsecured creditors. Based on the foregoing, a request by the Trustee to modify the plan to include the proceeds from the sale of the Property for that purpose would be denied. It is appropriate, therefore, to overrule the Trustee's objection to the Motion.

Accordingly, it is

ORDERED:

1. The Motion is granted.

2. The Trustee's objection as raised at the Hearing and as set forth in the Trustee's Supplemental Authority Following Hearing on Debtor's Motion to Sell Nonexempt Real Estate is overruled.

3. The Debtors' are authorized to sell the Property providing that all mortgages encumbering the Property are paid in full from the proceeds.

4. Any proceeds remaining after payment of mortgages and closing costs and the remaining payments due or to become due, if any, under the Plan, shall be property of the Debtors and not property of the estate.

12. The Ninth Circuit Bankruptcy Appellate Panel in *In re Burgie* described the legal authority supporting this proposition as the "lump sum doctrine." Under this doctrine, if the asset in question is an anticipated stream of payments, it is included in the projected disposable income. If the asset is not a stream of payments, it is not included. 239 B.R. at 411.