**In re Fred I. JACOBS, Carol Ann Jacobs, Debtors.**

**No. 94–10218.**

United States Bankruptcy Court, N.D. New York.

May 16, 2001.

---

———

Andrea E. Celli, Albany, NY, Chapter 13 Standing Trustee.

O'Connor, O'Connor, Mayberger & First, P.C., Albany, NY, Michael J. O'Connor, of Counsel, for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Currently before the Court is the December 13, 2000 Motion ("Trustee's Motion") by Chapter 13 Trustee Andrea E. Celli ("Trustee") to modify the confirmed individual debt adjustment plan of Debtors Fred I. Jacobs and Carol Ann Jacobs ("Debtors") pursuant to Section 1129 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"). On February 27, 2001, the Debtors filed an Affirmation in Opposition to the Trustee's Motion. Oral argument was heard before this Court at a special term held on March 2, 2001, in Utica, New York, after which the parties were afforded the opportunity to submit supplemental memoranda of law. On April 20, 2001, the Trustee submitted a brief in support of her position ("Trustee's Brief in Support"). The Debtors submitted a memorandum of law in opposition to the Trustee's Motion on April 27, 2001.[1]

Following this supplementation of the parties' respective positions, oral argument was again heard before this Court at a special term held on May 4, 2001, in Utica, New York, at which time the matter was submitted for written decision.

## JURISDICTION

The Court has core jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A), (L) and (O).

## FACTS

The parties do not dispute the material facts. The Debtors filed for protection under Chapter 13 of the Code on January 25, 1994. Among the assets listed on the Debtors' personal property schedule was an ownership interest in Colonial Realty Co. and C & L of Saratoga, Inc. ("Colonial and C & L") with a scheduled value of $1.00. It appears that no objection was interposed to this scheduled value. On July 13, 1994, the Debtors' individual debt adjustment plan was confirmed providing for 60 payments of $1,000 with no less than a 10% dividend to general unsecured creditors. On April 26, 1999, the Chapter 13 Trustee received the Debtors' final payment under the confirmed plan. An accounting upon final payment revealed that the class of general unsecured creditors had actually received a 14% dividend, 4% above that contemplated under the Debtors' confirmed plan. The Trustee refund-

---

**1.** It is noted that despite the April 20, 2001 deadline imposed by the Court for submission of memoranda of law, Debtors' counsel, without a request to the Court, appears to have simply ignored that deadline in submitting its memorandum. The Court cautions counsel that in the recent past this Court has refused to consider a party's tardily submitted attempt to substantiate its position. *See generally, Breeden v. Arkin, Schaffer & Supino (In re*

*the Bennett Funding Group, Inc.),* Ch. 11 Case No. 96–61376, Adv. Pro. No. 98–70484A, slip op. at 12–13 n. 5 (Bankr.N.D.N.Y. October 30, 2000, Gerling, C.J.). In the instant case, however, the Court does not feel it just that the Debtors should bear the consequence of counsel's disregard for this Court's imposed deadlines and is thus inclined to consider the Debtors' April 27, 2001 Memorandum of Law.

ed the Debtors $134.00, representing the Debtors' "overpayment of the 'base' [plan] amount..." Trustee's Motion, at ¶ 12.

Thereafter, on motion by the Debtors, an Order was granted on October 22, 1999, directing estate creditor Citibank to refund the estate, through the Trustee, an amount that Citibank was overpaid on its claim. The Trustee received the refund from Citibank on March 31, 2000, the funds were redistributed to creditors and the Trustee began preparing the case for closure. On April 26, 2000, the Trustee was notified by the Lawyers Group for Colonial Limited Partnership Investors ("Lawyers Group") that the Debtor "Fred Jacobs, was entitled to a distribution from third party settlements of his interest in..." Colonial and C & L. Trustee's Motion, at ¶ 8. On May 2, 2000, the Trustee notified the Lawyers Group to remit any settlement proceeds to the Trustee. Thereafter, over $20,000 was remitted to the Trustee representing Debtor Fred Jacobs' interest in the aforementioned settlement proceeds. On March 31, 2000, the Trustee received the settlement proceeds. On December 13, 2000, the Trustee filed the instant motion pursuant to Code § 1329 seeking modification of the Debtors' confirmed plan to provide for the settlement proceeds to be distributed through the plan, thereby increasing the dividend to the general unsecured creditor class.

## ARGUMENTS

The Debtors argue that the Trustee's Motion should be denied on two grounds. First, the Debtors argue that the Trustee's motion is barred as untimely since post-confirmation plan modifications pursuant to Code § 1329(a) must be sought prior to the completion of payments under such plan. Code § 1329(a). The Debtors contend that completion of payments, as that phrase is used in Code § 1329(a), is effect-

ed when a debtor tenders the final payment contemplated under the plan to the trustee, rather than when the trustee makes her final distribution to creditors. The Debtors assert that because their final payment was tendered to and received by the Trustee in April 1999, their payments have been complete since that time and the Trustee's motion is untimely. Furthermore, the Debtors contend that but-for their successful action to recoup overpayment from Citibank, they would have received their discharge over one year ago and granting the Trustee's Motion would, in effect, punish the Debtors for recouping said overpayment for the benefit of the estate creditors.

Second, the Debtors contend that allowing the Trustee to recover the settlement proceeds for distribution to creditors would be an extension of the Debtors' plan past five years which Code §§ 1322(d) and 1329(c) impose a Congressionally mandated prohibition against doing.

The Trustee asserts that her Motion is timely since the "completion of payments" requirement in Code § 1329(a) should not be construed to mean the completion of the terms contemplated under the Debtors' plan, rather, it should be construed as the certification by the Trustee that the Debtors have met all the financial requirements under the plan. The Trustee asserts that she has not done so, thus, the case remains open and the Trustee's right to seek modification is not foreclosed.

In addition, the Trustee contends that the subject settlement proceeds constitute a windfall to the Debtors which she is entitled to capture on behalf of the creditors. The Trustee asserts that the partnership interests in Colonial and C & L are property of the estate and the settlement proceeds represent the liquidated value of that asset. Because the appreciated value of the Debtors' interest in busi-

nesses has not revested in the Debtors, it is the appropriate target for distribution by way of the instant motion.

## DISCUSSION

### A. Timeliness of the Trustee's Motion

■ Code § 1329(a) states in pertinent part "[a]t any time after confirmation of the plan but *before the completion of payments under such plan*, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim..." Code § 1329(a)(emphasis added). Although this section of the Code allows for modification upon request of the trustee, "it limits the time for modification to the span between the confirmation and completion of payments under the plan." *In re Chancellor*, 78 B.R. 529, 530 (Bankr.N.D.Ill.1987). Once the completion of payments has occurred, "a motion to modify is time barred." *In re Sounakhene*, 249 B.R. 801, 803 (Bankr. S.D.Cal.2000). As the Code provides no accompanying guidance, what constitutes "completion of payments," as that term is used in Code § 1329, has been the subject of several varying interpretations. For instance, the completion of payments cutoff for modification requests "could be measured in terms of passage of time..." in relation to the number of months contemplated in the plan. 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.42, at 6–125 (1997)(footnote omitted). Thus, in a 36 month plan, completion of payments occurs after 36 months, a 48 month plan after 48 months and so on. *See id.* Under this viewpoint, the Debtors' plan was complete in April 1999.

Alternatively, completion of payments could mean the payment of a sum certain into the plan or " 'base' amount to the Chapter 13 Trustee." *See id.* If the plan contemplates that the debtor is to pay a certain dollar amount to the trustee, once

that dollar amount is reached, the debtors have completed payments under the plan. *See id; see also, In re Beasley*, 34 B.R. 51, 53 (Bankr.S.D.N.Y.1983)("Neither the plans nor the confirmation orders contained no [*sic*] statement that any unforseen reduction in the number of creditors would correspondingly reduce the amount of payments required by the debtors under their plans [and]...[t]he Code affords no separate basis for such relief.") In the instant case, the Trustee has asserted that the "[D]ebtors were required to pay a total of a total of $62,862.00 to the Trustee[ ]" representing "the plan 'base' amount." Trustee's Motion, at ¶¶ 4, 12, respectively. In April 1999 the Debtors overpaid the "base amount," as that term is used by the Trustee, thereby completing their payments under this viewpoint.

Further still, completion of payments has been interpreted as requiring a debtor to pay the percentage of unsecured claims as contemplated in the confirmed plan. LUNDIN, *supra*, § 6.42, at 6–125 (footnote omitted). "[O]nce the debtor has paid that percentage of unsecured claims, the debtor could be said to have completed payments under the plan." *Id.* (footnotes omitted). Under this rationale, the Debtors completed their payments under the plan when unsecured claimants received 10% of their respective claims. While it is uncertain when that might have occurred in the instant case, it is known that the class of unsecured creditors received at least a 14% dividend when the Debtors final April 1999 payment was distributed.

At least one court, although reversed on appeal, has held that a debtor's payments under a confirmed plan are not compete until the debtor makes all the payments to the trustee *and* all such payments have been distributed to the debtor's creditors. *In re Casper*, 153 B.R. 544, 548 (Bankr. N.D.Ill.1993), *rev'd in Casper v. McCul-*

*lough (Matter of Casper)*, 154 B.R. 243, 247 (N.D.Ill.1993). Under this scenario, the earliest point at which the Debtors' plan was arguably complete was when the Trustee distributed the Debtors' final April 1999 payment and the latest point at which the Debtors' plan was complete would have been the date of redistribution of the sum recouped from Citibank at the Debtors' behest.

Another viewpoint, that which is naturally urged by the Trustee, reasons that it is not until the chapter 13 trustee certifies to the bankruptcy court that the debtor has completed all financial obligations under the plan and is entitled to a discharge that the debtor has completed all payments under the plan. Thus, the completion of payments is generally left to the discretion of the trustee and as long as a case remains open, no matter how inequitable the result or how fortuitous the reason, the debtor has not completed payments under the plan.[2]

 Cognizant of the aforementioned differing schools of thought, this Court notes that those courts addressing the "completion of payments" issue have "generally...held that a plan is 'complete' when the debtor makes all the payments to the trustee." *In re Sounakhene*, 249 B.R. at 803, *citing In re Phelps*, 149 B.R. 534, 539 (Bankr.N.D.Ill.1993); *In re Moss*, 91 B.R. 563, 565 (Bankr.C.D.Cal.1988); *Casper*, 154 B.R. at 247. Therefore, when a debtor completes his obligations as provided for in the terms of a confirmed plan, that debtor has effected a completion of payments under such plan. *See Casper*,

154 B.R. at 246, *citing In re Chancellor*, 78 B.R. at 530. "The bankruptcy courts should look to the **substance of the plan** and the **nature of the debtor's total obligation** to the allowed creditors in order to discern when payments under a plan are complete." *Casper*, 154 B.R. at 246, *citing In re Chancellor*, 78 B.R. at 530 (emphasis added). In this regard the Debtors in the instant case have overpaid the base amount contemplated under the plan, have made all 60 payments as contemplated under the plan and have provided the class of unsecured creditors a dividend greater than that promised under the plan. Consequently, it cannot simply be said that the Debtors have not competed payments under the plan.

The Court should note that the facts of the instant case are generally distinguishable from those cases interpreting the "completion of payments" cutoff before which a qualified party may seek modification under Code § 1329. In many of the cases cited above, the debtor met the dividend promised to creditors in the plan prior to the length of time contemplated under the plan, *see e.g., In re Phelps*, or in a dollar amount significantly less than that contemplated under the plan, *see e.g., Casper*. Ultimately, the trustee sought modification seeking to continue payments to the trustee until either the end of the plan term or until the debtor met the threshold dollar amount contemplated in the plan thereby increasing the dividend payable to the unsecured creditor class. In the instant case, the Debtors have satisfied each and every requirement under the plan.

---

**2.** "In U.S. Bankruptcy Court for the Northern District of New York in the Albany division, Chapter 13 debtors are required to pay a minimum 'pot' of money to the Trustee (i.e. 60 payments of $100.00) and to provide general unsecured creditors with a stated minimum percentage of their allowed claims, as well as to meet all other stated terms of the

plan. It is the Chapter 13 Trustee's duty to certify to the Court that the same has been accomplished and that the debtor is entitled to a Chapter 13 discharge. Until the Chapter 13 Trustee has certified the same to the Court, the case is open and active." Trustee's Brief in Support, at 5 (emphasis in original).

While this fact does, indeed, distinguish the instant case from those cited above, it does so only to the detriment of the Trustee's argument. The Debtors have satisfied every legal interpretation of "completion of payments" that this Court is aware of, save for one; that which the Trustee posits controls in this case.

The Trustee contends that "distinctions drawn based upon the expiration of the plan term, the time of the final plan payment or the final disbursement by the Trustee rather than upon the timing of the determination that all of the financial terms of the plan have been satisfied, are not appropriate." Trustee's Brief in Support, at 5. The distinction drawn by the Trustee is that most of the case law addressing the completion of payments require the debtor to meet *either* a "pot"

amount *or* a percentage amount while in the Northern District of New York, Albany Division, debtors are required to meet the a "pot" amount *and* a percentage amount. This distinction is lost, however, since it appears that these Debtors have met both the "pot" and percentage requirements under the confirmed plan. The Trustee's argument is additionally belied by her concession in her original motion papers that the Debtors achieved a 14% dividend when only 10% was required, and that the Debtors were refunded $134.00 representing their overpayment of the base amount due under the plan. *See* Trustee's Motion, at ¶¶ 3, 12. The absence of any relevant case law on this point in the Trustee's moving papers is additionally telling.[3]

---

3. In her supplemental brief the Trustee cites two cases in particular, *In the Matter of Carr*, 159 B.R. 538 (D.Neb.1993) and *In re Delmonte*, 237 B.R. 132 (Bankr.E.D.Tex.1999). Because it is unclear whether she cites them as supportive or distinctive of her position, the Court would be remiss not to briefly discuss them herein. *See* Trustee's Brief in Support, at 4. In both cases the issue that was addressed revolved around the debtors' entitlement to a Chapter 13 discharge and neither case is particularly supportive of the Trustee's Motion. In *In the Matter of Carr*, the debtor's plan, as confirmed, called for 36 payments of $100, for a total payout of $3,600 and an unsecured creditor dividend of 100%. *See In the Matter of Carr*, 159 B.R. at 539. Three months after confirmation, the trustee's priority claim for fees was filed and allowed without objection, the effect of which was to render the plan unfeasible as confirmed, however, no objection as to feasibility was raised by the Trustee. *See id.* At the end of the 36 months, the debtors moved for discharge and the trustee objected since, due to the allowance of her priority claim for fees, general unsecured creditors had not received their 100% distribution as contemplated under the plan. *See id.* The court found that because the "amount and number of payments provided for in the plan do not yield enough to accomplish what the plan provides" the debtor was not entitled to a dis-

charge. *In the Matter of Carr*, 159 B.R. at 542.

A similar result was reached in *In re Delmonte* where the court found that "[a] Chapter 13 debtor has a two-fold obligation under a confirmed plan. It must make the plan payments required of it and those payments must be sufficient to do what the plan proposes.'" *In re Delmonte*, 237 B.R. at 137, *quoting In the Matter of Escobedo*, 169 B.R. 178, 179 (Bankr.N.D.Ind.1993), *aff'd. In the Matter of Escobedo*, 28 F.3d 34 (7th Cir.1994). The debtors in *In re Delmonte* paid off their plan two months after confirmation and the court denied the debtors a discharge reasoning that, in hindsight, the debtors could only have paid off the plan in two months in bad faith. *See id.* at 138. The *Delmonte* court reasoned that "[l]acking other evidence, the only reasonable conclusion that this Court can make as to the source of the pre-payment...is that the funds derive from working income of the debtors' business operations, i.e. their disposable income...Therefore, the Debtors' good faith in proposing and confirming the Plan dedicating all of their disposable income to the Trustee for the payment to creditors is called into question, as is the Debtors' eligibility to receive a discharge under the Bankruptcy Code provisions." *Id.* at 138–139.

In the instant case there has been no allegation that the Debtors' compliance with the

### B. Trustee' Motion to Modify

 Pursuant to Code § 1329(a), the Court may, at the request of the trustee any time following confirmation but prior to completion of payments under such plan, modify a debtor's plan to increase or reduce payments to a particular creditor class. *See* Code § 1329(a). "A trustee's application [for plan modification] 'should be limited to situations in which there has been a ***substantial change*** in the debtor's income or expenses that was ***not anticipated*** at the time of the confirmation hearing.' "[4] *In re Solis*, 172 B.R. 530, 532 (Bankr.S.D.N.Y.1994), *quoting* 5 L. KING, COLLIER ON BANKRUPTCY, ¶ 1329.01 at 1329–5 (15th ed.1994), *as cited in In re Furgeson*, Ch. 13 Case No. 99–64888, slip op. at 12, 2001 WL 641875 (Bankr.N.D.N.Y. March 22, 2001, Gerling, C.J.)(emphasis added in *In re Solis* ); *cf. Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865 (2d Cir.1983)(stating in *dicta* that modification of confirmed plan is appropriate to accommodate debtor's unforeseen change in circumstances). "This view comports with the legislative history suggesting that § 1329(a) was enacted to complement the 'ability-to-pay' test of § 1325(b)." *In re Richardson*, 192 B.R. 224, 226 (Bankr.S.D.Cal.1996)(footnote omitted). For purposes of plan modification, an increase in income or the receipt of a large sum of money constitutes a substantial change. *See In re Furgeson*, slip op. at 13, 2001 WL 641875; *In re Solis*, 172 B.R. at 532 (citations omitted). Such a change is unanticipated "where 'a debtor's altered financial circumstances could not have been reasonably anticipated at the time of confirmation by the parties seeking modification.' " *In re Solis*, 172 B.R. at 532, *quoting In re Fitak*, 121 B.R. 224, 226 (S.D.Ohio 1990). Typically this is so where the debtor acquires property post-confirmation, the likes of which would result in a windfall to the debtor absent plan modification, such as lottery winnings or an unexpected inheritance.

However, "[a]ppreciation in property, by itself, has generally not been found by the courts to be sufficient changed circumstances to support modification of a [confirmed] plan." 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.53, at 6–166 (1997)(footnote omitted). Appreciation or depreciation value of an asset initially

---

plan has not yielded what the plan contemplated, nor is there any allegation that the Debtors' plan was proposed in bad faith. To the contrary, the Trustee has conceded that the Debtors were entitled to a refund having met the base financial obligations of their plan. Moreover, whether the Debtors are entitled to a discharge is a question for another day and bears no consequence on the timeliness of the Trustee's motion. Consequently, this Court finds *In the Matter of Carr* and *In re Delmonte* generally inapplicable to support the Trustee's motion.

4. The Court acknowledges a competing line of cases holding that Code § 1329 requires no change in circumstances as a threshold requirement to modification. *See in re Studer*, 237 B.R. 189 (Bankr.M.D.Fla.1998), *citing In re Brown*, 219 B.R. 191 (6th Cir. BAP 1998); *In re Powers*, 140 B.R. 476 (Bankr.N.D.Ill.

1992); *Matter of Witkowski*, 16 F.3d 739 (7th Cir.1994); *In re Powers*, 202 B.R. 618 (9th Cir. BAP 1996); *In re Jourdan*, 108 B.R. 1020 (Bankr.N.D.Iowa 1989); *In re Evans*, 77 B.R. 457 (E.D.Pa.1987); *In re Perkins*, 111 B.R. 671 (Bankr.M.D.Tenn.1990). However, adhering to the intimation of the Court of Appeals in *Johnson v. Vanguard Holding Corp. (In re Johnson)*, courts in the Second Circuit generally prefer a change in circumstances as a condition precedent to modification. *See Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865 (2d Cir.1983); *In re Solis*, 172 B.R. 530, 532 (Bankr.S.D.N.Y. 1994); *In re Klus*, 173, B.R. 51, 58 (Bankr. D.Conn.1994); *In re Walker*, 114 B.R. 847 (Bankr.N.D.N.Y.1990, Gerling, J.); *In re Furgeson*, Ch. 13 Case No. 99–64888, slip op. at 12, 2001 WL 641875 (Bankr.N.D.N.Y. March 22, 2001, Gerling, C.J.)

scheduled in a Chapter 13 case is an intrinsic benefit or risk of ownership with the increase or decrease in value constituting nothing more that an incident of ownership. *See In re Trumbas*, 245 B.R. 764, 767 n. 6 (Bankr.D.Mass.2000); *In re Euler*, 251 B.R. 740 (Bankr.M.D.Fla.2000). Thus, by virtue of the transfer of that value to cash, namely liquidation by the debtor, the trustee and, in turn, the general unsecured creditors are granted no greater rights of entitlement by virtue of the liquidated nature of that asset. *See In re Euler*, 251 B.R. at 745. In this regard, the appreciation value of an asset or the liquidation thereof bears no consequence on a debtor's ability to pay based on future earnings determined at confirmation quite simply because the debtor has not experienced any substantial unanticipated change in financial position. *See generally, In re Trumbas*, 245 B.R. at 767 n. 6.

Juxtapose this issue as presented in the instant case with that addressed by U.S. Bankruptcy Judge Michael G. Williamson in *In re Euler*, cited *supra*. *See generally, In re Euler*, 251 B.R. at 740. The debtors in *In re Euler* filed a Chapter 13 petition on January 8, 1997 scheduling an improved parcel of non-exempt real property, namely the debtors' non-homestead New Jersey townhouse, as having a fair market value of $142,000. *See id.* at 743. The debtors owned scheduled equity in the New Jersey townhouse of approximately $14,000 above the $127,000 encumbering mortgage. *See id.* at 743. On September 22, 1997 the debtors' plan was confirmed providing for a 42% dividend to general unsecured creditors. *See id.* In May 2000, the debtors filed a motion seeking approval of the sale of the New Jersey townhouse for the purchase price of $207,000. *See id.* The sale price revealed, apparently for the first time, that the debtors' equity in the townhouse was some $54,000 above that scheduled in the original petition. *See id.* The

debtors' motion contemplated paying off the eight remaining payments on the plan, totaling $4,644, with the balance payable to the debtors. *See id.* The Chapter 13 trustee objected to the debtors' motion and, as in the instant case, moved to modify the debtors' plan allowing the liquidated equity from the sale of the property to be distributed through the plan thereby increasing the dividend to the general unsecured creditor class. *See id.*

Judge Williamson denied the trustee's motion on several grounds. As the first ground for rejecting the trustee's motion, Judge Williamson opined that allowing a chapter 13 trustee to distribute proceeds from an asset liquidated by the debtor, when the trustee himself could not liquidate that asset, would strike at the very purpose of Chapter 13 bankruptcy which "is to encourage financially overextended individuals to make greater voluntary use of repayment plans...under which the debtor keeps all of the debtor's assets (other than those the debtor chooses to surrender)." *In re Euler*, 251 B.R. at 744–745 (parenthetical in original). Judge Williamson reasoned that because the debtor has the exclusive right to file a proposed individual debt adjustment plan, as long as the debtor proposes a confirmable plan, a Chapter 13 debtor cannot be compelled to liquidate an estate asset to pay unsecured creditors. *See id.* at 745. Allowing the trustee to distribute the proceeds of the liquidation of a debtor's asset, merely because of its newly liquidated nature, would give the trustee greater rights to the value of an asset that he would not otherwise be entitled to in a Chapter 13 case. *See id.* Judge Williamson aptly reasoned that

> If the literal application of the words of § 1329 would allow the Trustee to now amend the Plan—*with the result that the Trustee can accomplish through amendment what the Trustee could*

*not accomplished* [*sic* ] *in the first instance*—then that is a result demonstrably at odds with the intentions of the drafters of the Bankruptcy Code. It is clear that the drafters of the Bankruptcy Code intended that the Debtor has the exclusive right to propose a plan dealing with the Debtor's assets and liabilities existing as of the date of confirmation of that Plan. To now allow the Trustee to accomplish through amendment a treatment of the assets of the Debtor existing on the date of Confirmation would defeat the Debtor's exclusive right to file a Chapter 13 Plan. At best, it would make Chapter 13 ambiguous as to a debtor's exclusive right to file a plan dealing with the debtor's assets and liabilities as of the date of confirmation. *Id.* (emphasis added and internal citations omitted). Accordingly, as in the instant case, the Code neither contemplates nor tolerates such action by the trustee.

As a second ground for denying the trustee's motion, Judge Williamson opined that the "principles of claim preclusion or *res judicata* bar a trustee from raising as grounds for modification facts that were known and could have been raised prior to confirmation of the debtor's plan." *In re Euler*, 251 B.R. at 746 *citing In re Wilson*, 157 B.R. 389, 390 (Bankr.S.D.Ohio 1993). Judge Williamson, relying on *In re Trumbas* cited *supra*, reasoned that "[a]n increase or decrease in the value of an asset 'is an intrinsic benefit (or risk) of ownership...'" and is not an unexpected windfall. *In re Euler*, 251 B.R. at 747 *quoting In re Trumbas*, 245 B.R. at 767 n. 6. Moreover, a change in the value of certain assets is an anticipated incident of ownership and can hardly be said to be reasonably unanticipated. *In re Euler*, 251 B.R. at 747. Because such appreciation is clearly distinguishable from the typical "windfall" scenario, *res judicata* will bar appreciation as grounds for modification

absent a provision in the plan enabling a qualified party to seek modification to account for such appreciated value. *See id.*; *see also, In re Trumbas*, 245 B.R. at 767 n. 6 ("An increase (or decrease) in the value of an asset...is not a 'windfall,'"); 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 6.53, at 1–166 (1997), *supra* (footnote omitted).

As final grounds for dismissing the trustee's motion, Judge Williamson found that, in any event, the proceeds from the sale of an appreciated asset are not disposable income that must be dedicated to the debtors' plan. *In re Euler*, 251 B.R. at 747. In fact, Judge Williamson opined that the proceeds of the sale of appreciated assets in a Chapter 13 case "never become disposable income for the purposes of a chapter 13...[and t]o hold otherwise is contrary to the basic structure of a Chapter 13." *Id. citing In re Burgie*, 239 B.R. 406, 409 (9th Cir. BAP 1999). Judge Williamson reasoned that the debtor's "bargain" in electing a voluntary Chapter 13, as opposed to a Chapter 7, is that "[i]n exchange for satisfying the best interest of creditors' test of § 1325(a)(4) [at confirmation], the debtor keeps these assets free from any claim of creditors." *In re Euler*, 251 B.R. at 748 *citing In re Burgie*, 239 B.R. at 409. The sale or liquidation of an estate asset by the debtor, post-confirmation, does not create new, additional disposable income for the purposes of Code § 1325(b)(4), rather a pre-petition interest in an asset is just that, an asset, and cannot become post-petition income by virtue of its transmutation into cash. *See In re Euler*, 251 B.R. at 748 *citing In re Burgie*, 239 B.R. at 409; *see also, In re Trumbas*, 245 B.R. at 767 n. 6 ("The change in value... does not affect the Debtor's ability to pay based on her future earnings because the Debtor has not experienced any change in income.")

In the case presently before the Court, the grounds employed by Judge Williamson in *In re Euler* are particularly instructive and equally applicable to deny the Trustee's Motion. In the first instance, the $20,000 plus settlement proceeds received from the Lawyers Group represents the current appreciated value of the Debtors' scheduled interest in Colonial and C & L. The Chapter 13 trustee has no more right to that interest today than she had at confirmation simply by virtue of is appreciation in value. Liken the instant case to that of the Chapter 13 debtor-stockholder whose stock value increases in the post-confirmation period. The trustee has no more right to seek liquidation of the stock if the market is up, just as the debtor has no right to expect the detriment to inure to the general unsecured creditors if the market is down.

Second, the preclusive effect of confirmation prohibits the Trustee from seeking relief now, that which could have been raised by objection and effectively dealt with in the plan at confirmation. While it is unknown whether and to what extent any inquiry was made into the scheduled value of the Debtors' interest in the subject businesses, the nature of the scheduled value in the instant case, $1.00, indicates to the Court that, if anything, appreciation was reasonably anticipated at the time of confirmation or at the very least should have been a topic of inquiry. Admittedly, the appreciation or depreciation of assets has received broader treatment in the courts where that asset is non-exempt real property, nonetheless, it is clear that such incidents of ownership cannot be manipulated by a trustee where *res judicata* prohibits such manipulation. This result is particularly compelling in the instant case where the Debtors have completed all obligation required of them under the confirmed plan.

Finally, the Debtors satisfied Code § 1325's best interest test at confirmation and have complied with the terms of the plan as contemplated thereunder. *See generally*, Trustee's Motion, Exhibit A, at 4 (certification by Trustee that plan satisfies the requirements of Code § 1325(a)). The result may very well be different if the Debtors had surreptitiously concealed the value or existence of an asset and the Trustee, through diligent inquiry and investigation, revealed the Debtors' ruse and was seeking modification to capture the hidden value for duped creditors. No such allegations have been asserted by the Trustee in the instant case. To the contrary, the Debtors' general obligations under the plan were complete in April 1999 when they sought to recapture additional value for the class of general unsecured creditors, thus, delaying their inevitable discharge. The Debtors have delivered their end of the bargain, and then some. Inequity would result if, after having delivered their end of the bargain, modification demanded more.

## C. *Extended Plan Duration*

██ Pursuant to Code § 1329(c) a court may not approve a modified plan that expires anytime later than five years after the first payment under the original confirmed plan was due. *See* Code § 1329(c); *see also*, Code § 1322(d)("[T]he court may not approve a [plan] period that is longer than five years."); Code § 102(4)("In this title, "may not" is prohibitive, and not permissive..."). This Court has consistently held that in analyzing a statute, a court must tread with caution to ensure that its interpretation will not result in statutory language being rendered meaningless, redundant or superfluous. *See In re Javarone*, 181 B.R. 151, 154 (Bankr.N.D.N.Y.1995, Gerling, C.J.), *quoting In re Mercy Hospital of Watertown*, Ch. 11 Case No. 90–02501, Adv. No. 93–

70117A, slip op. at 10 (Bankr.N.D.N.Y. 1994, Gerling, C.J.) (citations omitted). Thus, as a matter of law, a modified plan is unconfirmable if it calls for payments under the plan to any class of creditor for longer than sixty months. *See generally, In re Cutillo,* 181 B.R. 13, 16 (Bankr. N.D.N.Y.1995, Gerling, C.J.) ("Code § 1322[ (d) ] prohibits the Court from approving payments by Chapter 13 debtors which extend for a period of more than five years."). It necessarily follows, then, that a plan, as originally confirmed, that provides for payments over the statutory maximum sixty month period may not be modified after the expiration of that time to provide for any additional payments. *See In re DeBerry,* 183 B.R. 716, 717 (Bankr.M.D.N.C.1995)(holding that modification past initially confirmed 60–month plan duration is impermissible). To do so would be an impermissible extension of a Chapter 13 plan in derogation of Code § 1329(c).[5]

The Court is concerned that allowing a qualified party, such as the Trustee, to seek modification of a plan when it is clear to the Court that the debtor has satisfied all of its obligations under the plan and that doing so would be in derogation of the statutory limits imposed by Code §§ 1322 and 1329, would be to grant the Trustee *carte blanche* to seek modification of a completed plan months, and perhaps years, after the expiration of the plan term so long as the case remains an active one among the Trustee's case files. The inequity in the Trustee's request is readily apparent. Allowing modification under the circumstances in the present case would give the impression that this Court condones the brand of fiscal involuntary

servitude of the type the Congress explicitly sought to prohibit by enacting the Chapter 13 plan durational limits found in Code §§ 1322 and 1329. *See* H.R. REP. No. 95–595, at 117 (1977), *reprinted in,* 1978 U.S.C.C.A.N. 5787, 6078 ("Extensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to involuntary servitude . . . ."), *as quoted in In re Black,* 78 B.R. 840, 841–842 (Bankr.S.D.Ohio 1987). The Court is not so inclined to present such an impression when doing so would be in clear contravention of both the letter and spirit of Congressional mandate.

Based on the foregoing, it is hereby

ORDERED, that the Trustee's Motion to Modify the Debtors' plan pursuant to Code § 1329 is denied in all respects.

---

**5.** The Court notes that it does not consider the redistribution of the overpayment recouped from Citibank to be an extension of the Debtors' plan beyond the confirmed sixty month period. In this regard, the sum recov-

ered was not an additional payment into the confirmed plan or a court-authorized extension of the same but rather a recovery and redistribution of proceeds already paid into the plan.