**In re Robert GOLEK, Debtor.**

**No. 00 B 37527.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

April 15, 2004.

---

■■■■■■■■■■■■■■■■■

Jeffrey P. White, Kelleher & Buckley LLC, Barrington, IL, for Debtor.

### Memorandum Opinion

BRUCE W. BLACK, Bankruptcy Judge.

This matter is before me on debtor Robert Golek's ("debtor") "Motion for entry of an order of discharge and refund of overpayment." The Standing Chapter 13 Trustee has opposed debtor's motion. Jurisdiction in this court is proper under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Internal Operating Procedure 15(a) of the District Court. Venue is proper under 28 U.S.C. § 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### Facts

Debtor filed his chapter 13 petition in this case on December 26, 2000. This court approved debtor's plan on March 20, 2001. The confirmation order obligated the debtor to pay the trustee 36 monthly payments of $576. The order also stated:

> it is estimated that general unsecured claimants will receive 10% of the amount of their claims. In the event general unsecured creditors receive less than 10% within 36 months, debtor shall continue making plan payments for an additional 24 months, or until the trustee has received sufficient funds to pay 10% to allowed unsecured claimants, whichever occurs first.

On November 26, 2002, this court heard and granted debtor's motion to sell real estate, whereby debtor was authorized to sell his residence. The order further directed debtor to deposit with the trustee $17,397.17 from the sale proceeds, which debtor thought was the pay-off amount of his chapter 13 plan. The order finally allowed debtor to retain the remaining proceeds from the sale.

On August 8, 2003, debtor filed the current motion titled "Motion for entry of an order of discharge and refund of overpayment." In his motion, debtor alleges the $17,397.17 figure was quoted to him by the trustee as the pay off amount for his chapter 13 plan. Debtor further alleges that he has paid that sum to the trustee. Debtor finally alleges that after paying the trustee, the Illinois Department of Revenue withdrew two of its claims and as a result he need only pay $2,299.51 in order to pay off his plan as confirmed. The debtor seeks an order directing the trustee to pay his remaining creditors $2,299.51, to refund the remaining balance of $15,097.66 to debtor, and to discharge debtor from his chapter 13 case.

On September 9, 2003, the trustee filed her objection to debtor's motion. The trustee argues that debtor's motion, although titled otherwise, should be treated as a motion to amend his plan because the debtor proposes to terminate his plan before its 36 month term expires, thereby reducing the total pot available for general unsecured creditors. By terminating the plan in less than 36 months while continuing to pay his general unsecured creditors only 10% of their claims, the trustee argues debtor's proposed modification violates section 1329 of the Bankruptcy Code [1], which governs post-confirmation plan modifications. Under the trustee's interpretation of section 1329(b), the dis-

---

**1.** 11 U.S.C. § 1329. Any reference to "section" is a reference to the Bankruptcy Code, unless another reference is stated.

posable income test, found in section 1325(b), applies to post-confirmation plan modifications. The trustee argues that the court cannot approve a post-confirmation modification over her objection unless objecting general unsecured creditors are paid in full, or the debtor devotes all of his or her disposable income into the plan for a minimum of 36 months. The trustee asserts that the proceeds from the sale of debtor's real estate are disposable income, that the debtor must pay the entire $17,397.17 into the plan *and* continue making plan payments for 36 months if he is to be allowed to pay his general unsecured creditors less than 100% of their claims.

This matter has been fully briefed and argued, and I will discuss four issues: (1) whether debtor's plan is a pot plan or a percentage plan; (2) whether debtor's motion, despite its title, should be treated as a motion to amend his chapter 13 plan; (3) if debtor's motion is treated as a motion to amend the plan, whether the disposable income test under section 1325(b) applies to post-confirmation modifications; and (4) if the disposable income test does apply to post-confirmation modifications, whether proceeds from sale of debtor's real estate should be treated as disposable income that debtor must pay to the trustee. I will address each issue in turn.

### Discussion

### I. Pot Plan v. Percentage Plan

 A percentage plan designates what percentage of its claim each general unsecured creditor will receive without stating an exact dollar amount the debtor must pay into the plan until all claims are approved. *In re Witkowski*, 16 F.3d 739, 741 (7th Cir.1994). A pot plan, on the other hand, fixes the amount the debtor

must pay into the plan, leaving in question the percentage each general unsecured creditor will receive in payment of its claim until all claims are approved. *Id.* I conclude that debtor's plan in this case is a pot plan, with an additional condition of a minimum percentage.

Paragraph 2 of the confirmation order directs debtor to make 36 monthly plan payments of $576, thereby creating a fixed pot of $20,736 for the trustee to distribute to debtor's creditors.[2] The order then states:

> [i]t is *estimated* that general unsecured claimants will receive 10% of the amount of their claims. In the event general unsecured creditors receive *less than* 10% within 36 months, debtor shall continue making plan payments for an additional 24 months, or until the Trustee has received sufficient funds to pay 10% to allowed unsecured claimants, whichever occurs first. (Emphasis added)

By its terms, the plan's payment schedule creating the $20,736 pot is not subject to *reduction* post-confirmation. An order granting a motion to modify the terms of the plan could, of course, achieve such a reduction. Conversely, the trustee may, without authority from the court, *increase* the percentage paid to general unsecured creditors after confirmation if there are fewer allowed claims than initially anticipated. Thus, while the order makes reference to an estimated minimum percentage of general unsecured claims debtor must pay and allows the trustee to increase that percentage, the order does not allow the trustee or debtor to reduce the fixed pot of money debtor must pay into the plan. I reject the notion that debtor would satisfy his obligations under the plan by simply paying general unsecured creditors 10% of

---

**2.** In August 2003 the trustee disbursed the plan's "pot" of $20,736, resulting in a 35% dividend to general unsecured creditors. I find this disbursement was proper because the amount disbursed to creditors is the minimum which will be paid to creditors.

their claims without paying the total pot required under the plan. *See In re Martin,* 232 B.R. 29, 34 (Bankr.D.Mass.1999)(finding similar plan was a pot plan); *In re Barbosa,* 236 B.R. 540, 549 (Bankr.D.Mass.1999)(finding a 60 month term plan with $1,486 monthly payments was a pot plan despite a term requiring 10% dividend to general unsecured creditors).[3] Therefore, I conclude that debtor's plan in this case is a pot plan, requiring debtor to pay a minimum sum of $20,736 into the plan over a 36 month term.

## II. Treatment of Debtor's Motion

■ The second issue is whether debtor's motion, although not titled as such, should be treated as a post-confirmation motion to modify his chapter 13 plan pursuant to section 1329 of the Code. I conclude that it should. Debtor's motion, titled "Motion for entry of an order of discharge and refund of overpayment," proposes to shorten the term of the plan, thereby reducing the pot of funds available to his creditors. Because debtor was obligated to pay a fixed sum into his plan over a fixed term of months, his motion clearly seeks to modify the terms of the confirmed plan and should be treated as such. Therefore, for purposes of this opinion, I will treat debtor's motion as a motion to modify his plan post-confirmation.

## III. Application of the Disposable Income Test

■ Having determined that debtor's motion is a post-confirmation motion to modify his chapter 13 plan, the next issue is whether the disposable income test applies to such motions. I find that it does not.

Analysis of this issue involves an interplay between several sections of the Bankruptcy Code. Section 1325(a) lists the requirements for confirming a chapter 13 plan. As long as the debtor's plan satisfies these requirements, the court must confirm the plan, subject to the limitations of section 1325(b). Section 1325(b), which contains the disposable income test, prohibits confirmation of a plan over an objection by the trustee or a general unsecured creditor unless (1) the objecting creditor is paid in full, or (2) the debtor pays all of his or her disposable income[4] into the plan for a term of 3 years. After confirmation, section 1329(a) authorizes the debtor, the trustee, or general unsecured creditors to move to modify the confirmed plan. Section 1329(b)(1), however, lists a handful of restrictions on post-confirmation modifications. Among these restrictions is that the post-confirmation modification must satisfy the same requirements listed in section 1325(a) for initially confirming a plan.[5]

---

3. In *Witkowski, Martin* and *Barbosa* each court expressly doubted the validity of "percentage plans." In particular, each court doubted that a percentage plan would satisfy the good faith requirement under § 1325(a)(3).

4. Disposable income is defined as "income which is received by the debtor and which is not reasonably necessary to be expended—
 (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions to a qualified religious or charitable entity or organization in

an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made and;
 (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

5. Section 1329(b)(1) reads:
 Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

Section 1325(b)'s disposable income test, however, is not among the restrictions listed in section 1329(b)(1).

The trustee would have the Court read the disposable income test into section 1329(b)(1). She argues that section 1325(b) is incorporated by reference into section 1325(a).[6] The trustee asserts, therefore, that section 1325(a) and section 1325(b) both serve as restrictions on post-confirmation plan modifications.

I cannot adopt the trustee's interpretation of section 1329(b)(1). When Congress wants to say something, it knows how to say it, and in this instance, Congress did not say it. Indeed, section 1329(b)(1) goes out of its way to include *both* sections 1322(a) and 1322(b) in its list of restrictions. While section 1325(a) is expressly listed, however, section 1325(b) is not. It is unclear why Congress would expressly include both subsections of section 1322, but simply state section 1325(a), if it in fact meant to include both sections 1325(a) and 1325(b). If this was a mere omission by Congress, then it is for Congress, not this court, to fix this omission.

Rather than adopt a convoluted analysis of section 1329 to re-write federal legislation, I will employ the plain meaning approach, adopted by many other courts in refusing to apply the disposable income test to post-confirmation plan modifications. *See In re Forbes*, 215 B.R. 183, 191–92 (8th Cir. BAP 1997); *In re Sounakhene*, 249 B.R. 801, 805 (Bankr.S.D.Cal. 2000); *In re Moss*, 91 B.R. 563, 566 (Bankr.C.D.Cal.1988); *In the Matter of Coleman*, 231 B.R. 397, 401 (Bankr.S.D.Ga. 1999); *In re Anderson*, 153 B.R. 527, 529 (Bankr.M.D.Tenn.1993).

The trustee points to *In re Powers*, 140 B.R. 476, 480 n. 5 (Bankr.N.D.Ill.1992), to support her position. In that case, the court, in a footnote, justified applying section 1325(b) to a post-confirmation modification using the same analysis that the trustee advocates in the present case: i.e., that section 1325(b) should be included in section 1329(b)(1) by reference in section 1325(a). On this point, I must respectfully disagree.[7] The *Powers* approach simply ignores the plain language of the Code, something I am not prepared to do. I therefore conclude that the disposable income test does not apply to post-confirmation modifications. Consequently, the trustee's objection to debtor's motion on grounds that it fails to satisfy the disposable income test is not well-taken.

## IV. Whether Proceeds From the Sale of Real Estate Disposable Income

■ Deciding that the disposable income test does not apply to post-confirmation modifications, I have effectively resolved this matter in debtor's favor. I will, however, address the fourth issue because it repeatedly arises in my courtroom and throughout this circuit. The issue is whether proceeds from the sale of real estate are disposable income for purposes

---

6. Section 1325(a) reads in pertinent part:
 Except as provided in subsection (b), the court shall confirm a plan if—
 (1) the complies with the provisions of this chapter and with the other applicable provisions of this title ...

7. The Court in *Powers* also appears to have applied inconsistent methods of statutory interpretation. Earlier in the opinion, the court stuck to a strict, plain meaning approach to interpreting § 1329 when refusing to require a change in circumstances before a party could move to modify a plan under § 1329(a), stating that there is nothing in that section's language suggesting that such a requirement exists. However, the court was willing to read the requirements of § 1325(b) into § 1329(b)(1) despite there being no such authorization.

of the disposable income test.[8] The trustee asserts that the proceeds from the sale of real estate are disposable income and should be paid into the plan to satisfy the disposable income test.[9] Not surprisingly, the debtor urges me to find that the proceeds from a real estate sale are not disposable income, and therefore should be returned to debtor pursuant to this motion.

On this point, I again agree with debtor. The court in *In re Kerr,* 199 B.R. 370, 371 (Bankr.N.D.Ill.1996), was presented with a similar, but not identical issue. The issue in that case was whether the proceeds from the sale of *exempt* real estate were disposable income under section 1325(b)(2).[10] The court determined that they were not, stating "the best interests of the creditors test essentially requires the debtor to pay for his non-exempt assets over the term of the plan. Because the assets are valued as of the effective date of the plan, post-confirmation appreciation of the assets does not increase the debtor's burden under § 1325." *Id.* at 375 (quoting *In re Moore,* 188 B.R. 671, 676 (Bankr.D.Idaho 1995)); *see also In re Trumbas,* 245 B.R. 764, 767 n. 6 (Bankr. D.Mass.2000) (stating that an increase or decrease in the value of an asset "is an intrinsic benefit (or risk) of ownership and ... not a windfall, i.e., unexpected income.")

Faced with the identical issue as presented in this case, the court in *In re Burgie,* 239 B.R. 406, 409–410 (9th Cir. BAP 1999), concluded "proceeds of the sale of a debtor's real estate in a chapter 13 case never become disposable income for the purposes of chapter 13." The *Burgie* court reasoned that as part of the deal a debtor makes with his or her creditors when electing to file under chapter 13, as opposed to chapter 7, the debtor retains all *pre-petition* property in exchange for committing all *post-petition* disposable income to the payment of creditors under a plan of reorganization. *Id.* at 410; *see also In re Euler,* 251 B.R. 740, 748 (Bankr.M.D.Fla. 2000). And if the debtor makes all the necessary payments pursuant the plan, the debtor is permitted to keep all his pre-petition assets. *Burgie,* 239 B.R. at 410. Because pre-petition property includes the proceeds therefrom, the court concluded that the proceeds from a post-petition sale of debtor's real estate were not post-petition income. *Id.* As such, neither the trustee nor anyone else could compel the debtor to use the proceeds to fund the plan. *Id.*

I agree. There is no dispute in this case that debtor's home was his pre-petition property. By filing for chapter 13 bankruptcy, instead of chapter 7, he made a bargain with his creditors that he could keep his home in exchange for devoting all of his disposable *post-petition* income into a plan for 36 months. That debtor's pre-

---

**8.** In addressing this issue, I assume that the disposable income test does apply to post-confirmation plan modification motions, a legal position I have just rejected.

**9.** The only case cited in the trustee's analysis on this issue is *In re Powers,* 140 B.R. 476 (Bankr.N.D.Ill.1992). While *Powers* definitely addresses whether § 1325(b) applies to post-confirmation modifications, it does not appear to address whether proceeds from the sale of a house are disposable income. After determining that § 1325(b) authorized the

trustee to object to a post-confirmation amendment, vacated an order approving the debtor's amended plan because of the trustee's objection. *Id.* at 480. However, the court never decided whether the proceeds from sale of the debtor's house in that case actually were disposable income.

**10.** Debtor here has not claimed a homestead exemption in the proceeds from sale of his residence.

petition property has since changed form post-petition does not convert a pre-petition asset into post-petition disposable income. Sustaining the trustee's objection in this case would allow the trustee to do something post-confirmation that she was not able to do at the time of confirmation: force the debtor to use a pre-petition asset to fund the plan. *Euler,* 251 B.R. at 745.

■ *Burgie* offers a second argument I find persuasive: "only regular income and substitutes therefor can be counted in the determination of disposable income for purposes of the chapter 13 test." *Burgie,* 239 B.R. at 410. As such, courts have considered social security and pension benefits (*In re Schnabel,* 153 B.R. 809, 819 (Bankr.N.D.Ill.1993)) and disability payments (*In re Hagel,* 184 B.R. 793, 799 (9th Cir. BAP 1995)); *In re Jackson,* 173 B.R. 168, 171 (Bankr.E.D.Mo.1994) to be disposable income in the chapter 13 context. The proceeds from the sale of real estate, however, are not "regular" or recurring income or a substitution for it. Instead, the proceeds are a one-time transformation in form of a pre-petition asset. *See Euler,* 251 B.R. at 747. As a consequence, even if the disposable income test did apply to post-confirmation motions to modify a chapter 13 plan, I would conclude that proceeds from the sale of real estate do not qualify as disposable income that a chapter 13 debtor must devote to his or her plan.

### Conclusion

To summarize, I conclude that debtor's plan is a pot plan, with an additional condition of a minimum percentage. I also find that debtor's motion, although otherwise titled, is a post-confirmation motion to modify his plan. However, I refuse to apply the disposable income test announced in section 1325(b) of the Code to post-confirmation plan modifications. And

finally, even if the disposable income test did apply to post-confirmation plan modifications, I would conclude that the proceeds from the sale of real estate are not disposable income which a debtor must devote to his or her chapter 13 plan to satisfy the disposable income test.

For the reasons stated above, the trustee's objection is overruled, and the debtor's motion is granted. This opinion will serve as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, and a separate order will be entered.