**In re Daryoosh JAFARY, Debtor.**

No. 02–36535 (CGM).

United States Bankruptcy Court, S.D. New York, Poughkeepsie Division.

Nov. 18, 2005.

Thomas Genova, Wappingers Falls, NY, for Debtor.

## MEMORANDUM DECISION GRANTING DEBTOR'S REQUEST FOR AN ORDER PREVENTING CHAPTER 13 TRUSTEE FROM MAKING FURTHER DISTRIBUTIONS TO DEBTOR'S CREDITORS

CECELIA G. MORRIS, Bankruptcy Judge.

This controversy arises from a dispute regarding the proper disposition of certain funds forwarded to the Chapter 13 Trustee (the "Trustee") by a secured lender. The funds represent the double payment of secured pre-petition mortgage arrearages upon the refinance and completion of the Chapter 13 plan, respectively. Despite having filed a Notice of Request for Discharge After Completion of Chapter 13 Plan (the "Completion Notice") on this Court's Electronic Case Filing system, the Trustee retained those funds after certifying that plan payments were completed, without seeking to revoke the Completion Notice or making a motion in this Court pursuant to 11 U.S.C. § 1329(a) to modify the Debtor's confirmed plan.

The specific issue considered in this opinion is whether a Chapter 13 Trustee, who has filed with the Court a pleading representing that a debtor has completed plan payments, and after debtor's discharge has issued, may, without bankruptcy court permission, disburse additional funds to unsecured creditors received by the Trustee after the plan completion.[1] Upon the oral representations made by Debtor Daryoosh Jafary (the "Debtor") at the October 25, 2005 hearing, and the Memorandum of Law, ECF Docket No. 32, (the "Trustee's Memorandum") filed by the Chapter 13 Trustee, the Court finds that the Trustee is not entitled to distrib-

---

1. In these circumstances, the Court need not wrestle with the theoretical quandary of when plan payments are actually completed, because the Trustee filed his Completion Notice over a month before the received the Debtor's refunded arrearages from the secured creditor, thereby eliminating any uncertainty as to the status of the confirmed plan.

ute those funds to creditors and must return the money to Debtor within five (5) business days.

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. Sections 1334(a) and 157(a) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by acting Chief Judge Robert J. Ward. This is a core proceeding under 28 U.S.C. Section 157(b)(2). The following opinion constitutes the Court's findings of fact and conclusions of law under Bankruptcy Rules 9014 and 7052.

## BACKGROUND FACTS [2]

This Chapter 13 case was filed on June 27, 2002. The last date to file claims in this matter was October 29, 2002. After the plan went through several changes, the Debtor's third amended plan, ECF Docket No. 21, was confirmed by order entered on May 30, 2003, ECF Docket No. 26. Pursuant to the confirmation order the Debtor was to submit payments to the Trustee as follows: $200 for five months, $335 for three months, $305 for two months and $345 for fifty months. All secured arrearages were to be paid by the Trustee inside the Chapter 13 plan. The plan also states that all of Debtor's property would revest in the Debtor on confirmation of the plan. This is somewhat unfortunate drafting, the Court assumes that this means that the property of *the bankruptcy estate* revested in Debtor upon confirmation. *See* 11 U.S.C. § 1327(b).

A review of the docket in this case reveals that post-confirmation, this Debtor complied with the terms of his plan. No creditors sought relief from the automatic stay or otherwise alleged that the Debtor became delinquent in making mortgage payments, nor did the Chapter 13 Trustee seek dismissal of this matter at any time for failure to make plan payments.

At some point, the Debtor decided to refinance his home in 2004 and payoff his Chapter 13 plan early, including the prepetition arrears to ABN AMRO. The Trustee has filed an Exhibit to the Trustee's Memorandum, ECF Docket No. 34, comprised of correspondence dated July 20, 2004, addressed to Aegis Lending, in which the Trustee states, ostensibly with regard to this Debtor's refinance "...the Trustee has no opposition to the refinance or sale of Debtor's property as long as the balance is paid in full to complete the bankruptcy. Be advised that there remains a balance of $12,375.00 to pay all claims filed and complete the bankruptcy."

Debtor nevertheless continued to make plan payments for another year. The Court assumes that plan payments remained current because the Trustee never filed a motion to dismiss this case for failure to do so, and, additionally, the payoff balance reflecting the total amount due to complete the plan set forth in the July, 2004 letter is substantially more than the payoff balance forwarded to the Trustee in August, 2005, more than a year later. When Debtor eventually did refinance his home the secured creditor was repaid at the closing, in an amount sufficient to include the pre-petition arrears. In addition, the Debtor also submitted all the surplus refinance funds to the Trustee to complete the remainder of his bankruptcy plan. As set forth in the Trustee's Memorandum, on August 30, 2005, the Trustee received a payment of $9,270.00, which the Trustee indicates was more than adequate

---

**2.** All factual references are to the Trustee's Memorandum unless otherwise specifically stated.

to complete the plan, *including* payment of the pre-petition mortgage arrearages. The Court wishes to be extremely clear on this point—the Trustee received enough funds from the Debtor to pay the unsecured creditors their dividend pursuant to the confirmed plan as well as to satisfy the pre-petition mortgage arrears a second time. The result was that the pre-petition arrears were paid twice (once at the refinancing closing, and again by the Chapter 13 Trustee), the Debtor's plan was completed, and the Trustee proposed to provide Debtor with a refund of $690.00.

On September 6, 2005, the Trustee issued a Notice and Request for Discharge After Completion of the Chapter 13 Plan (the "Completion Notice"), ECF Docket No. 27. The first sentence of the Completion Notice states "Please take notice that the above-referenced Debtor has made *all required payments* under the Chapter 13 plan." (Emphasis supplied). The Debtor was granted a discharge based upon this certification on September 9, 2005, see ECF Docket No. 29. By filing this document on this Court's Electronic Case Filing system, the Trustee certified that the Debtor had completed the plan payments on the public record. At that time, Debtor no longer owed any money under the confirmed chapter 13 plan, according to the Trustee's own admission.

On October 19, 2005, Debtor filed with the Court a letter request, *pro se*, ECF Docket No. 31, which reads in its entirety "Hi, I, Daryoosh Jafaray residing at 19 Kirchner Ave Hyde Park New York, request a hearing reg. My banckruptcy (sic) case # 02–36535. I also request from Honerable (sic) judge to order The (sic) Trustee (sic) 'Mr Jeffrey Sapir', to stop any further disbursement of the fund."

The Court scheduled the Debtor's request for a hearing on October 25, 2005. The Trustee appeared telephonically on that date and made an oral argument as to the appropriateness of retaining the funds in question; the Court thereafter directed the Trustee to file a brief outlining his position.[3] The Trustee's Memorandum was filed on November 3, 2005.

The Trustee's Memorandum sets forth the factual circumstances underlying this controversy and the Court's decision is based upon the Trustee's exposition of the facts. The Trustee contends that the $4,945.40 he received in October, 2005 from ABN AMRO, the secured creditor, should be distributed to allowed unsecured claims increasing their dividend, and not refunded to Debtor. The Trustee did not seek Court permission to make these distributions. He states that because the Debtor's plan was a pot plan, and cites case law that the Trustee interprets to allow a trustee to increase dividends to unsecured creditors without bankruptcy court approval. The Trustee further argues Debtor's confirmed plan gave the Trustee the exclusive right to disburse the pre-petition arrears and there was no authority for Debtor to pay those pre-petition arrears directly, and thus, Debtor violated the confirmation order when the prepetition arrears were paid at the refinancing closing.

## DISCUSSION

### Debtor's pro se status

Although Debtor was originally represented in the bankruptcy filing by the law firm of Genova & Malin, it is that firm's standard practice to include in its clients' confirmation orders a decretal paragraph

---

**3.** Among the Chapter 13 Trustee's duties, as set forth in 11 U.S.C. § 1302, is the obligation to "(2) appear and be heard at any hearing

that concerns(C) modification of the plan after confirmation..."

that relieves the firm of further representation of bankruptcy debtor(s) post confirmation. The confirmation order in this case contained such a provision. Debtor appeared with different counsel at the October 25, 2005 and November 15, 2005 hearing dates, but the new attorney was never retained in this case, never filed any documents with this Court in connection with this controversy, spoke very little and said nothing legally substantive at either hearing. For these reasons it is this Court's opinion that the Debtor was substantially without representation from any quarter with regard to this controversy, and his pleading, such as it was, has been given the deference due *pro se* parties. "Implicit in the right of self representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983).

### Necessity of Making a Motion Pursuant to 11 U.S.C. § 1329(a) to Modify Debtor's Confirmed Plan to Increase the "Pot" or Percentage

■ The Court's research has revealed that contrary to the Trustee's arguments, a confirmed Chapter 13 plan has *res judicata* effect and cannot be modified absent court permission in the form of an order. The case *In re Davis*, 314 F.3d 567 (11th Cir.2002) provides an excellent analysis of this point. The issue before the Eleventh Circuit in that case was "whether the [Chapter 13] trustee exceeded his statutory authority by **unilaterally altering the claim amounts** prior to the discharge of bankruptcy or without the benefit of a court order." *Id.* at 569. (Emphasis supplied). The Eleventh Circuit went on to hold:

A Chapter 13 plan of confirmation has *res judicata* effect unless it is subse-

quently modified by a bankruptcy court order. *See* 11 U.S.C. §§ 1327, 1329. The confirmation plan includes, inter alia, the claim amounts that will be paid to each creditor, therefore, the alteration of an amount to be distributed to a creditor is a modification of that plan. 11 U.S.C. § 1329(a). Section 1329 sets forth the means by which a modification may be obtained and provides that the confirmation plan may be modified upon request by the trustee, debtor, or holder of an unsecured claim. *Id.* The "request" language of § 1329(a) presupposes that such request must be accepted or denied by order of the bankruptcy court. Absent bankruptcy court order of modification, the confirmation plan must be executed as originally approved. § 1327(a)...[a]bsent a request by a proper party (i.e. the trustee) and consideration and approval by the bankruptcy court, the trustee's modification of the Plan was invalid.

*Id.* at 570. *See also In re Hallmark*, 225 B.R. 192, 195 (Bankr.C.D.Cal.1998) (the only way a chapter 13 trustee may change the binding effect of § 1327 is to request modification under § 1329). In this case, the Trustee had the burden of coming forward to obtain this Court's permission to dispense the returned funds when he received them, which was after certifying the Debtor's absolute compliance with and completion of the Chapter 13 plan. Turning to 11 U.S.C. § 1327(a), the Court notes that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Parties must be able to rely on the binding effect of a confirmed Chapter 13 plan. The Debtor is also entitled to finality, particularly in these circumstances, where Debtor has successfully navigated the labyrinth of

Chapter 13 and received his Chapter 13 discharge. Interested parties must be assured that a confirmed plan will not be altered unless they are notified of such proposed change and have an opportunity to object thereto. As discussed in greater detail below, in order to increase the amount paid by the Debtor into a pot plan (as opposed to increasing the percentage paid to unsecured creditors from the fixed pot of money established by the plan) [4] the Trustee was required by 11 U.S.C. § 1329(a) to bring a motion to modify the Debtor's confirmed chapter 13 plan. What the Chapter 13 Trustee attempted to do in this case, i.e. keep the excess money received after the confirmed plan was completed, without seeking specific Court permission to do so, deprives the parties of their due process right to appear and be heard regarding an attempt to modify this Court's confirmation order and is reminiscent of a deliberate scheme to circumvent the judicial process in an effort to retain Debtor's funds.

It is very likely that the Trustee never sought Court permission to retain and ultimately disburse the funds at issue and could not have done so because such motion would have been untimely.

> For purposes of § 1329, timing of the motion is critical and it must be filed before a debtor has completed payments under the confirmed plan. On rare occasions, Chapter 13 debtors complete

their plans sooner than expected, which effectively bars a § 1329 motion to increase the dividends to unsecured claimants...Thus timing is everything with respect to § 1329 motions to modify. *See In re Drew,* 325 B.R. 765, 770–71 (Bankr.N.D.Ill.2005), *see also In re Pancurak,* 316 B.R. 173, 176 (Bankr.W.D.Pa.2004)("Under § 1329(a), the Trustee may request modification of the Debtor's plan but such a postconfirmation modification is not permitted after payments under the confirmed plan have been completed.").

The Debtor in this instance completed his plan payments early. The Trustee himself filed on September 6, 2005 on this Court's Electronic Filing System a Completion Notice acknowledging, in fact, *certifying,*[5] that the Debtor had completed all payments necessary under the plan. The plain language of 11 U.S.C. § 1329(a),[6] in addition to well-settled case law, mandates that a motion to modify a confirmed Chapter 13 plan must be filed prior to completion of plan payments. The Trustee did not receive the excess funds in this case until over a month after certifying that Debtor had completed payments due under the plan. The Trustee has not provided the Court with any authority for the proposition that a pot, or percentage, or ANY confirmed Chapter 13 plan may be unilaterally modified by the Chapter 13 Trustee, **after plan completion,** to in-

---

**4.** The Court does not decide herein whether the Trustee must file a § 1329(a) motion to increase the dividend to unsecured creditors based upon fewer than anticipated filed claims.

**5.** Fed. R. Bankr.P. 9011(b) states "By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of that person's knowledge, information, and belief, formed after an inqui-

ry reasonable under the circumstances,—(3) the allegations and other factual contentions have evidentiary support..."

**6.** 11 U.S.C. § 1329(a) provides: "At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan..."

crease payment to unsecured creditors (thereby also increasing the Trustee's compensation as well). Although the Trustee was time barred from bringing a motion to modify the Debtor's confirmed plan, he failed return the funds to Debtor; instead the Debtor was forced to seek Court intervention on his own initiative. The Court is disconcerted that the fiduciary that collects thousands of debtors' plan payments and in whom is invested the public and judicial trust for this task has failed to live up to that responsibility to seek Court approval of his actions in these obviously uncertain circumstances.

### Pot or Percentage Plan:

In support of his argument that he did not need Court approval to increase payment to unsecured creditors, the Trustee asserts that the Debtor's confirmed Chapter 13 plan was a "pot plan," [7] which refers to a "pot" of money that Debtor is required to pay to the Trustee for distribution of creditors. This "pot" consists of a fixed amount of money and the percentage that a creditor ultimately receives depends on the number of claims filed in the bankruptcy case. The Trustee cites to language in *In re Golek,* 308 B.R. 332 (Bankr. N.D.Ill.2004), (permitting a trustee to increase payment to creditors of a "pot" plan without court approval) as authority for his actions. The problem with the Trustee's reliance on *Golek* is the limited reach of the statement referred to; to wit:

> "*By its terms,* the plan's payment schedule creating the $20,736 pot is not subject to reduction post-confirmation. An order granting a motion to modify the terms of the plan could, of course,

achieve such a reduction. Conversely, the trustee may, without authority from the court, increase the percentage paid to general unsecured creditors after confirmation if there are fewer allowed claims than initially anticipated."

*Id.* at 335.

The trustee's ability to increase the percentage paid to unsecured creditors in that matter was based upon explicit language contained in the actual confirmation order entered in the *Golek* case, and was not meant to stand for the general proposition that a Chapter 13 trustee may modify a plan unilaterally. The pertinent language in the *Golek* case clearly indicates that the bankruptcy court relied on the terms of the confirmation order itself. Note that any increase to creditors paid pursuant to a pot plan was to be predicated upon fewer-than-anticipated filed claims, and **not**, as the Trustee seems to suggest, because additional sums were submitted to the Trustee that would increase the amount of the pot. *See In re New York Medical Group, P.C.,* 265 B.R. 408, 411 n. 2 (Bankr. S.D.N.Y.2001) ("Under a pot plan, the debtor pays a fixed amount, and *the percentage that each creditor receives depends on the total amount of allowed claims* sharing the pot.") (emphasis supplied); *In re Witkowski,* 16 F.3d 739, 746 (7th Cir. 1994)(A pot plan anticipates that a debtor would contribute a certain amount or "pot" of money which would be distributed to creditors); *Meyer v. Pagano,* 2002 WL 31159110 at * 1 (N.D.Cal. Sept. 25, 2002)("A 'pot plan' is a plan under which the debtor pays a fixed amount, or 'pot' of money, into the bankruptcy estate. The

---

**7.** The Court assumes, without deciding, that the plan at issue was a "pot plan." The Court's analysis would be identical regardless of the nature of the plan, because the modifi-

cation was sought after discharge was granted upon the Trustee's certification of plan completion.

percentage of a claim that creditor ultimately receives from the bankruptcy estate will depend on the total amount of approved claims."); *see also* Arnold B. Cohen, *Pot Plans Should be Replacing Percentage Plans in Chapter 13*, 4 J. BANKR. L. & PRAC. 305, 306 (Mar./Apr. 1995)("...when distributable funds aggregate less than the amount owed to all creditors, the fewer the creditors who file proofs of claim, the more such creditors will receive. Conversely, the larger the number of unsecured creditors filing proofs of claim, the smaller will be the percentage that such creditors receive on account of their allowed claims."). In this matter, all claims were filed well in advance of confirmation, and the amount to be paid to unsecured creditors was established by the confirmation order. Thus there was no need to include language in Debtor's confirmation order permitting an increase in payments to unsecured creditors based upon claims filed; any late filed claim could ostensibly be objected to and disallowed. *See* 11 U.S.C. § 502(b)(9) and Fed. R. Bankr.P. 3007. Thus this case is factually and legally distinguishable from *Golek*.

The broad reading of the *Golek* case that the Trustee would have the Court adopt ignores the plain language of § 1329(a). Thus, the Court does not read the *Golek* case as standing for the proposition that a Chapter 13 Trustee may modify a pot plan to increase the pot of money to be paid to the unsecured creditors without moving, pursuant to 11 U.S.C. § 1329(a), to increase the amount to be paid into the plan. Section 1329(a) and cases interpreting that section unambiguously require court permission before a confirmed plan may be modified. *Golek merely* recites that the confirmation order entered in *that* case granted specific permission to *that* particular Chapter 13 Trustee to increase the dividend to unsecured creditors based upon actual claims filed in that case. The Court is mystified by the Trustee's interpretation of the *Golek* case and can only surmise the Chapter 13 Trustee read this paragraph out of context of the *Golek* case itself without taking into consideration the vast majority of case law, including *Golek*, which clearly states that a pot plan contemplates payment by the Debtor of a fixed sum of money. The amount paid to the unsecured creditors under a pot plan is determined by the number and amount of claims filed, and not by any increase in the pot itself.

In retaining the $4,945.40, the Trustee in this instance seeks unilaterally to increase the amount of the pot. The Trustee has admitted in his Memorandum that he "received...a payment of $9,720.00 [in August, 2005] which was indeed more than sufficient to complete the plan." Subsequent to that final payment, which included secured post petition arrearages and exceeded the sum owed to creditors under the plan by $690.00, the Trustee received an additional $4,945.40 after Debtor's discharge had been granted. The Court finds that any further distribution to unsecured creditors would require a motion seeking an upward modification of Debtor's confirmed Chapter 13 plan. The Court rejects the Trustee's argument that this may be accomplished without a court order.

**Payment of Secured Arrears Through the Plan:**

█ The Court does not decide whether Debtor may pay his pre-petition arrears outside his plan under these circumstances, as such a ruling is unnecessary to the determination made herein that the Trustee must forward the refunded arrearages to the Debtor. The Trustee argues

that Debtor violated the terms of his confirmation order by paying the arrearages "directly." Debtor, mistakenly or otherwise,[8] paid the secured lender its pre-petition arrears at the closing. Nevertheless, the Trustee received enough funds from Debtor to repay the pre-petition arrears as well, and presumably the Trustee received a commission on those arrearages. The Court assumes that the secured creditor mistakenly, or out of an abundance of caution, refunded the overpayment to the Trustee. The Trustee was legally required to seek court direction in determining whom the appropriate party was to receive the funds. The Court now finds that the appropriate party to receive this money is the Debtor and his money must be returned forthwith to him.

### CONCLUSION AND ORDER

The Chapter 13 Trustee is hereby ordered to forward the excess funds of $4,945.40 to the Debtor within five (5) business days.

---

8. The Court cannot imagine a secured creditor releasing its lien unless the mortgagor's indebtedness was satisfied in full at closing. In order to take a first priority interest in Debtor's real property, the refinancing mortgagee would also insist on repaying the existing mortgagee all amounts owed to it at closing. Thus the suggestion that Debtor would have to withhold funds from the secured creditor seeking satisfaction at closing in order to transmit those funds to the Trustee, who would then remit those funds to the same secured creditor, seems extremely inefficient, if nothing else; but the Court leaves the decision as to whether this is appropriate for another day, as not necessary to the decision rendered herein.